**STATE of Iowa, Appellee,**

v.

**Joseph George ABODEELY, Appellant.**

**No. 53864.**

Supreme Court of Iowa.

Sept. 2, 1970.

Arthur N. Nasser and Raymond J. Smith, Chicago, and R. Fred Dumbaugh, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and William G. Faches, County Atty., for appellee.

BECKER, Justice.

Defendant was charged by county attorney's information with aiding and abetting a confederate in an attempt to commit abortion. He pled guilty, was sentenced to an indeterminate sentence not to exceed five years in the Iowa State Penitentiary at Fort Madison, fined $100. and costs. Subsequently he filed motion in arrest of judgment and to vacate sentence. The motion was overruled. Plaintiff appeals. We affirm.

Defendant is accused of having confederated with Merle Jess Meyers and Donald Ray Geater in attempting to produce a miscarriage by Gloria Jean Judd. The record in this case indicates the attempt to produce an abortion by Miss Judd was one of a series of such acts all performed by the same men. The actual work on the women was

done by Meyers with the assistance of Geater. The State charged defendant as an aider and abettor. The evidence indicates defendant acted as a referral source or procurer. The minutes of evidence indicate the State was prepared to prove defendant referred at least three women, other than Miss Judd, to Meyers and Geater.

During the course of the hearings, defendant admitted referring seven women over a three year period to Meyers and Geater. Defendant claims he received no financial gain. Evidence produced by the State at the hearing preparatory to sentencing indicates defendant did realize a financial gain and that he referred far more than the seven women he noted in his own testimony. One of the women, Mrs. Wright, died immediately after having been treated by these men.

The ensuing investigation culminated in charges against Meyers, Geater and defendant in connection with attempts to produce abortions by several women. Meyers was tried and convicted on a charge involving Miss Judd. He peld guilty to a second prosecution. Geater pled guilty to the Judd case and turned State's evidence. Thereafter, on October 24, 1968 defendant was charged in the instant case and in two other similar cases. On October 28, 1968 he personally appeared in court with his two attorneys, Ted V. Ruffin and R. Fred Dumbaugh.

Motion for change of venue, motion for bill of particulars and various other motions were filed. The change of venue was denied. The bill of particulars was granted as to most requests. For some seven months pending rulings on these various motions defendant was out on bond and in frequent communication with his attorneys.

The trial court's findings of fact on all of these matters are fully supported by the record. Our independent examination of the record convinces us defendant frequently discussed the advisability of pleading not guilty and going to trial before a jury, the witnesses to be used against him, the fact they would be subject to cross-examination, the fact it would be best for him not to testify because, in the words of his lawyer, "he would have to admit under oath the very things that are the essence of the case. * * *." Defendant claimed he was innocent because he did not directly participate in the attempt to commit abortion and because he claimed he received no remuneration.

The defense attorneys told defendant they thought the court erred in not granting the change of venue, the action would probably be upheld by the Iowa Supreme Court, but might be cause for reversal before the United States Supreme Court. They told him he had a good chance to get probation but indicated the prosecutor would not so recommend. Mr. Ruffin told defendant that if the case went to jury trial he would withdraw because they would be just going through the forms but Mr. Dumbaugh, who is still an attorney of record, gave no such indication.

The case was set for trial on June 16, 1969. On June 12, 1969 defendant appeared in court with his attorneys, indicated he wanted to plead guilty and did so plead. Before accepting the plea, the court made extensive inquiry of defendant who said this was his own voluntary decision, there had been no threats or promises, he knew the punishment provided was a term not exceeding five years and a fine not exceeding $1000, he knew he might or might not get probation, he had discussed the matter with his attorneys and was satisfied with them.

At this point a matter came up that requires quotation from the record.[1]

1. "The Court: And are you satisfied with the representation that they have given you in this matter? The Defendant: I am. But I thought the charge was aid and abet. I see it's attempting.

"The Court: I might make an explanation on that. The charge is attempt to produce abortion and under the Iowa Code aiding and abetting in any crime is the crime itself. In effect, we don't have

At the subsequent presentence hearing on July 7, 1969 defendant reaffirmed his plea upon inquiry by the court. Defendant and nine other witnesses testified at the presentence hearing. The testimony of defendant and Geater, who appeared as a State's witness, was in serious conflict. The court suggested and defendant agreed to a polygraph test for both men by an operator agreed upon by the parties. The hearing recessed until July 24, 1969 while the test was conducted. Defense counsel chose the examiner. The hearing was resumed and at the conclusion thereof the court sentenced defendant. A parole was not granted. Subsequently, defendant obtained new counsel. Motion in arrest and to vacate was filed and overruled. This appeal followed.

## THE GUILTY PLEA

I. Defendant attacks the proceeding surrounding the plea of guilty on three grounds: (1) the court failed to inform defendant of his constitutional rights; (2) the court did not inform defendant of the possible scope of punishment; and (3) the plea was involuntary and coerced.

The manner of factual determination of validity of the plea of guilty is primarily controlled here by the impact of three cases, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; and State v. Sisco (Iowa 1969) 169 N.W.2d 542.

■ The McCarthy case held rule 11 of the Federal Rules of Criminal Procedure must be followed. The judge must personally make inquiry into the nature of defendant's understanding of the charge, the consequences of his plea and whether there is a factual basis for the plea. This is mandated in order to determine whether the plea is truly voluntary and to provide an adequate record for review. The court expressly states it did not reach any constitutional considerations in deciding the case. Although McCarthy was decided April 2, 1969 before the plea in this case was taken, it was not binding on the trial court, nor is it binding on this court, because it limits itself to federal procedural problems. We recognized the constitutional overtones inherent in the case when we decided State v. Sisco, discussed infra. We do not abandon such recognition now.

State v. Sisco, supra, also examined a plea of guilty. We there relied heavily on McCarthy v. United States, supra, recognized the binding effect of Boykin v. Alabama, supra, and adopted by judicial opin-

such a crime as aiding and abetting. The Defendant: I see.

"The Court: Do you want to take an opportunity to visit with your counsel regarding that? The Defendant: No, I guess not.

"The Court: I think I'd just as soon have you understand.

"(Mr. Dumbaugh and the defendant conferred.)

"Mr. Dumbaugh: That's the title of the particular section—

"The Court: The title of the section involved is attempt to produce abortion. That is the name.

"Mr. Dumbaugh: That's the name of the particular crime. Whether you aided or abetted or actually did it, you are still charged under the same section. Defendant: Is that charge or aid—

"The Court: Why don't you take a moment. Here's the Code, Mr. Dumbaugh, and go over the Code Section Chapter 701 and then I would suggest that you also go over Section Chapter 688. Mr. Dumbaugh: All right. Fine, Your Honor.

"The Court: Make sure that the defendant understands. (Mr. Dumbaugh and the defendant conferred.)

"The Court: Do you understand now: The Defendant: Yes, sir.

"The Court: A very simple illustration: If Smith commits a robbery and Jones aids and abets him, Jones is guilty of robbery, too. All right. Are you satisfied with the representation— The Defendant: Yes, sir.

"The Court: —that Mr. Ruffin and Mr. Dumbaugh have given you in this case? The Defendant: Yes, sir.

"The Court: And do you understand that by pleading guilty you are admitting that you are in fact guilty and that you did aid and abet in the commission of this crime? The Defendant: Yes, sir."

ion the American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, Approved Draft, Nos. 1.4, 1.5 and 1.6 which require the court to personally address defendant and to follow certain procedures to make a satisfactory record as to the validity of the guilty plea.

State v. Sisco, supra, was decided July 24, 1969 after the plea of guilty here was taken. In State v. Jackson (Iowa 1970) 173 N.W.2d 567, 570, we said:

"We hold, as we did in State v. Vantrump, supra (Iowa 1969) 170 N.W.2d 453 that the guideline standards adopted in State v. Sisco apply only to guilty pleas entered after the date of that opinion, July 24, 1969. * * *."

Boykin v. Alabama, supra, is the third case of note. Boykin was decided June 2, 1969 before the plea was taken in this case. It is binding on us as a matter of United States constitutional law. We recognized this mandate in State v. Sisco, supra. Boykin v. Alabama undoubtedly requires that in all pleas of guilty in state courts the record must disclose defendant voluntarily and understandably entered his plea of guilty. Further, it must be shown defendant knew he was waiving the privilege against self-incrimination, the right to trial by jury and the right to confront one's accusers. But the United States Supreme Court in Boykin did not attempt to impose a rule of criminal procedure mandating the manner by which the record was to be developed. This was left to the state courts and was met in Iowa by State v. Sisco, supra.

Although Sisco applies only to pleas entered after July 24, 1969 defendant is still entitled to a complete record at the time the plea is entered of the factors relevant in assisting the trial court and this court in making the constitutionally required determination that a defendant's guilty plea is voluntarily made. We therefore make the determination here in the light of the constitutional principles announced in Boykin v. Alabama, supra. When the record here is so examined it furnishes adequate support for the trial court's ultimate finding.

II. As the trial court observed, this is not a silent record. We have examined the original court reporter's transcripts as well as the record presented. The material supplies ample support for the trial court's ultimate finding.

Defendant is 38 years old; a high school graduate with three years of college training: an experienced business man of at least eight years. Parts of his business interests could at best be said to be operated on the fringes of the law. He had pled guilty to bootlegging. He knew Meyers had been tried to a jury and convicted. He knew Geater had pled guilty. He had numerous conferences with his two competent attorneys, he had been present at hearings on motions for continuance, for bill of particulars, to inspect evidence and for change of venue. The latter hearing involved use of affidavits and testimony of witnesses.

Defendant made an application for change of venue *on the grounds he could not get a fair and impartial jury,* supported the application by his own personal affidavit and sat through several days hearings thereon. We find defendant knew he was entitled to a jury trial and knew he was waiving this entitlement when he pled guilty.

III. Similarly, where defendant's attorneys testified they advised defendant he could not afford to take the stand and where the record reflects long conferences before defendant elected to plead guilty, we find defendant was aware of his fifth amendment right to remain silent.

IV. The same record supports the finding defendant knew he had a right to be confronted by his accusers. His participation in the hearing on motions for bill of particulars and to inspect exhibits belies

any other finding. He also had actually attended an unrelated criminal trial for a short time and observed the trial procedure.

■ V. What has heretofore been said, plus the minutes of evidence, supports the court's finding that it had satisfied itself there was a factual basis for the crime charged and defendant's participation therein.

■ This case is factually distinguishable from State v. Sisco, supra. Defendant argues that the record here does not meet the requirement of personal inquiry by the court which is now required by State v. Sisco. Due to nonretroactivity, it does not need to meet those criteria. It does meet the requirements of Boykin v. Alabama, supra—which is sufficient for a plea taken before Sisco but after Boykin.

■ VI. Defendant's claim his plea was coerced and involuntary is without merit. Certainly defendant was in a difficult position as he faced trial. His attorneys recognized defendant's own story proved his guilt. The county attorney was threatening to file notice of additional testimony which presumably would further detail defendant's connection with the crime charged. This filing was being held up pending defendant's decision on whether or not he would plead guilty. Subsequent hearings showed the State had a great deal of additional evidence to prove defendant's complicity in the crime charged and more than the seven referrals he admitted. The State also had evidence to prove defendant profited financially from his participation; a fact he denied.

The only possible avenue of defense would be, as present counsel suggests, failure to prove specific intent. This was then, and is now in retrospect, a very remote possibility. Such a decision involved a judgment determination.

■ Defendant's attorneys advised a guilty plea and an effort to obtain parole. They anticipated, and later received, dismissal of two companion charges. There was a good faith evaluation by counsel, their advice was taken. The fact the parole was not forthcoming does not affect the validity of the initial professional opinion given. State v. Lindsey (Iowa 1969) 171 N.W.2d 859, and cases cited. Cf. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed. 2d 747 and McMann, Warden v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763, all decided by the Supreme Court of the United States on May 4, 1970.

■ VII. Defendant claims he was not advised of the range of punishment for the crime charged. Just before defendant entered his plea the following colloquy occurred:

"Mr. Abodeely, you are charged with attempt to produce abortion in violation of Iowa Code Section 701.1. That Code Section provides as punishment imprisonment in the penitentiary for a term not exceeding five years and a fine in a sum not exceeding $1,000.00.

"Are you aware that that is the— The Defendant: Yes, sir.

"The Court: —punishment provision? The Defendant: (Nod in the affirmative.)

"The Court: You are charged with the offense of attempt to produce abortion in violation of Iowa Code Section 701.1. How do you plead? The Defendant: I plead guilty, Your Honor."

Only one possible sentence is involved. This was the literal import of the court's advice. We do not think defendant was misled in any way. He knew he had a chance for parole but the court was careful to inform defendant this would depend on the result of the presentence hearing. Beyond that he was told of the only punishment provided by statute. He indicated he understood.

■ In effect defendant argues the court should have explained the ramifica-

tions of the Indeterminate Sentence Law to defendant. While such procedure might have been advisable it was not essential. There was no error in this regard.

We hold defendant's plea was "made voluntarily and with full understanding of the consequences". Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009.

## CONSTITUTIONALITY OF SECTION 701.1, CODE, 1966

▮▮▮▮ VIII. Defendant challenges the constitutionality of section 701.1, Code, 1966, which makes an attempt to produce an abortion a crime. The statute is challenged for vagueness and uncertainty and because it denies equal protection. In dealing with these two attacks we start from the premise that one who challenges a statute on constitutional grounds assumes the burden to negate every reasonable basis to sustain it. A statute will not be declared invalid unless it is clearly, palpably and without doubt unconstitutional. State v. McNeal (Iowa 1969) 167 N.W.2d 674, 677; Lee Enterprises, Inc. v. Iowa State Tax Commission (Iowa 1968) 162 N.W.2d 730, 737.

▮▮▮▮ IX. The first constitutional attack is predicated on People v. Belous (California 1969) 80 Cal.Rptr. 354, 458 P.2d 194. The Supreme Court of California in a 4 to 3 decision held the phrase "unless the same is necessary to preserve her life" is unconstitutionally vague and uncertain. Our statutory phrase "unless such miscarriage shall be necessary to save her life" is substantially similar.

We are not persuaded by the majority opinion in People v. Belous, supra. The phrase found in the Iowa statute has been clear enough for satisfactory use for over 100 years. It should not now be the occasion for declaring the statute constitutionally invalid. This is the sense of two dissenting opinions in the California case. We agree.

We need not attempt to elaborate on the dichotomy set forth in the California opinions. A note in 51 Iowa L.Rev. 883, 901 states: "Only five jurisdictions in the United States have statutes which do not expressly allow abortions to save the life of the mother. In two of these states it has been held that the statute implied an exception to save life. * * *." To our knowledge no other state has seen fit to find the claimed offensive words vague and uncertain. We decline to do so now.

X. The "denial of equal protection" argument is predicated on our decisions interpreting this statute. State v. Dunklebarger, 206 Iowa 971, 974, 221 N.W. 592, 594 states:

"* * * It follows also that, if a regular physician does make an examination, and does form an opinion, and does act upon it, he is entitled to the presumption of correct judgment and good faith, until the contrary be proven. * * *." But no such presumption applies in favor of a person not a physician. State v. Rowley, 198 Iowa 613, 199 N.W. 369. We again refer to the note in 51 Iowa L.Rev. at page 898:

"Section 701.1 does not distinguish abortions attempted by physicians from those attempted by laymen. However, the Supreme Court of Iowa has held that if a regular physician makes an examination, and acts upon it, he is entitled to the presumption of correct judgment and good faith, thereby falling under the therapeutic exception. If the defendant is not a physician, there will be no such presumption. This is a sound distinction because the absence of medical skill adds to the risk of injury. * * *."

▮▮▮▮ The legislature may make reasonable classifications between citizens affected by legislation. If the law operates equally upon all within the same class there is uniformity in the constitutional sense. Dickinson v. Porter (1949) 240 Iowa 393, 400, 35 N.W.2d 66, 72; State v. Wrenn (1922) 194 Iowa 552, 554, 188

N.W. 697, affirmed Wrenn v. State, 263 U.S. 688, 44 S.Ct. 228, 68 L.Ed. 507. The classification imposed on the statute by this court's interpretation is neither unreasonable nor arbitrary. The cases noted do not make the statute unconstitutional.

## CONSTITUTIONALITY OF CHAPTER 769

## PROSECUTION BY COUNTY ATTORNEY'S INFORMATION

■ XI. Use of the county attorney's information is said to be violative of the United States Constitution, Amendment 5, made applicable to the states by Amendment 14. This challenge has been made before in State v. Allnutt (Iowa) 158 N.W. 2d 715; Hoskins v. Bennett, 256 Iowa 1370, 1376, 131 N.W.2d 510; Kotek v. Bennett, 255 Iowa 984, 988, 124 N.W.2d 710, appeal dismissed and certiorari denied, 376 U.S. 188, 84 S.Ct. 637, 712, 11 L.Ed.2d 604. In the latter case we said: "* * * County attorney informations, to be effective, must be approved by a judge of the district court (section 769.7) and the rights of an accused are amply protected by other provisions of chapter 769 of our Code. Also see 49 Iowa Law Rev. 14, at page 23."

The United States Supreme Court's last definite pronouncement on this subject was Hurtado v. California (1884) 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232. The use of the California prosecutor's information was held not to violate the United States Constitution, Amendment 5. In Benton v. State of Maryland (1969) 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 the court said:

"Recently, however, this Court has 'increasingly looked to the specific guarantees of the [Bill of Rights] to determine whether a state criminal trial was conducted with due process of law.' Washington v. Texas, 388 U.S. 14, 18, 87 S.Ct. 1920, 18 L.Ed.2d 1019, 1022 (1967). * * *.

"* * * Once it is decided that a particular Bill of Rights guarantee is 'fundamental to the American scheme of justice.' Duncan v. Louisiana, supra, 391 U.S. 145 at 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 at 496, the same constitutional standards apply against both the State and Federal Governments. * * *."

Prosecution by indictment has not been found to be so "fundamental to the American scheme of justice" as to come within the ambit of the Fourteenth Amendment. Prosecution by information has not been proscribed by federal edict. On the basis of both reason and authority we again hold the Iowa county attorney's information procedure valid.

## CONSTITUTIONALITY OF INDETERMINATE SENTENCE LAW

■ XII. Defendant's final attack on the Iowa statutes on constitutional grounds is leveled against the Indeterminate Sentence Law, Code, 1966, § 789.13. He argues the power and discretion of the court has been usurped by the Parole Board, there is no guarantee the Board will follow any recommendations the court might make and this might well result in a full five years of incarceration. He argues this would be cruel and unusual punishment under the facts of this case. We disagree.

■ The powers of the court have not been usurped but the determination of length of incarceration has been delegated to the Parole Board. This has been adjudicated a constitutional delegation of power and authority to an administrative body. State v. Duff, 144 Iowa 142, 122 N.W. 829. We do not believe the sentence results in cruel and unusual punishment in light of the facts noted ante.

We find no reversible error in this case.

Affirmed.

All Justices concur, except REES, J., who takes no part.