Gordon A. BRAINARD, Appellant,

v.

STATE of Iowa and Lou V. Brewer, Appellees.

No. 2–56775.

Supreme Court of Iowa.

Oct. 16, 1974.

James U. Mellick, Waukon, for appellant.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., and Harley Stipp, County Atty., for appellees.

McCORMICK, Justice.

This is an appeal from a denial of relief in a postconviction proceeding. Petitioner brought the postconviction action to challenge his conviction and sentence on two unrelated charges of larceny of a motor vehicle under Code § 321.82. He alleged the trial judges in each instance failed to comply with the guidelines of State v. Sisco, 169 N.W.2d 542 (Iowa 1969), and related federal constitutional standards in accepting his guilty plea. Trial court rejected his contention and dismissed his petition. We reverse and remand.

Petitioner entered his plea of guilty to the first charge before Judge C. H. Wild on September 10, 1971. He was represented by attorney Nels W. Branstad. He was later given an indeterminate ten year penitentiary sentence on this conviction but was granted probation. Petitioner entered his plea of guilty to the second charge before Judge John F. Stone on November 5, 1971.

He was again represented by attorney Branstad. He was later given an indeterminate ten year penitentiary sentence on this conviction, without probation.

We must decide whether there was compliance with Sisco and federal constitutional standards in the taking of the pleas under postconviction attack here. This attack focuses on the first, second and fourth Sisco requisites. The third requisite, the determination of voluntariness, is involved only insofar as it is affected by noncompliance with the first two. Our cases and federal cases interpreting Rule 11 and the due process clause of the Fourteenth Amendment, United States Constitution, provide guidance as to what a trial judge must do in receiving a guilty plea under the standards applicable here.

In the Sisco case we adopted standards 1.4, 1.5 and 1.6 of the American Bar Association Minimum Standards for Criminal Justice, Pleas of Guilty. We noted they are essentially the same as Rule 11, Federal Rules of Criminal Procedure. 169 N.W.2d at 548. They require that when a guilty plea is tendered the judge must personally address the defendant to determine whether (1) he understands the charge made, (2) is aware of the penal consequences of the plea, and (3) the plea is entered voluntarily. They also require (4) that the judge make such inquiry as will satisfy him there is a factual basis for the plea. See Ryan v. Iowa State Penitentiary, 218 N.W.2d 616 (Iowa 1974).

These guidelines have two purposes. One is to assure that the defendant's plea of guilty is "a voluntary and intelligent act done with actual knowledge of the existence and meaning of the constitutional rights involved and with full understanding of the nature of the charge made against him and the direct consequences of the plea." State v. Reppert, 215 N.W.2d 302, 304 (Iowa 1974). The other is to "help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged,

and are more difficult to dispose of, when the original record is inadequate." McCarthy v. United States, 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418, 428 (1969); State v. Sisco, supra, 169 N.W.2d at 545–546. In the light of these purposes we agree with the court in McCarthy that, "It is * * * not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking." 394 U.S. at 472, 89 S.Ct. at 1174, 22 L.Ed.2d at 428–429.

■ We have consistently held no rigid formula need be followed, but meaningful compliance with the Sisco guidelines is required. State v. Reppert, supra, 215 N.W.2d at 304–305. Meaningful compliance means substantial compliance. State v. Sisco, supra, 169 N.W.2d at 551; cf. Sappington v. United States, 468 F.2d 1378, 1380 (8 Cir. 1972), cert. denied, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693. ("It is essential that there be substantial compliance with Rule 11 * * *.")

In Sisco we also acknowledged the applicability to state guilty plea proceedings of federal due process standards delineated in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The requirements of Boykin are thus superimposed upon the American Bar Association standards adopted in Sisco.

In this case we will examine in turn the first and second Sisco requisites and then the merits of petitioner's attack on his two convictions.

■ I. *The first Sisco determination.* The first Sisco requirement, the determination of defendant's understanding of the charge, has two aspects. The judge must explain the charge to the defendant, and he must inquire into defendant's understanding of it.

■ Several of our recent cases have discussed this responsibility. They include Michels v. Brewer, 211 N.W.2d 293 (Iowa 1973), State v. Sargent, 210 N.W.2d 656 (Iowa 1973), State v. York, 210 N.W.2d 608 (Iowa 1973), and State v. Hackett, 201 N.W.2d 487 (Iowa 1972). In Michels v. Brewer we said the extent of the trial judge's explanation and inquiry into the defendant's understanding necessarily varies with the circumstances in each case. These circumstances include the complexity of the charge, the accused's education and experience, and other factors involved in the particular case.

■■ The first aspect, the duty to explain the charge, was involved in the Sargent, York, and Hackett cases. In each case we found the name given the offense was sufficiently descriptive of its nature to obviate further explanation. However, we observed in Michels v. Brewer, supra, the better practice is to explain the elements of the charge. Whether failure to do so is sufficient to upset the conviction depends upon the entire record, including the complexity of the charge and other circumstances surrounding the proceeding. Our position is similar to that expressed by the court in Paradiso v. United States, 482 F.2d 409, 414 (3 Cir. 1973), where the court held the mandate of Rule 11 does not preclude an explanation of the charge by reading the indictment, but added, "The district court should exercise its discretion in determining when additional explanation of the charge is necessary." See Kress v. United States, 411 F.2d 16, 21 (8 Cir. 1969).

■ The second aspect of the first Sisco requirement was involved in Michels v. Brewer and State v. Sargent, supra. The trial judge must inquire into the defendant's understanding of the charge. The defendant's understanding can best be determined by an inquiry in which the judge relates the elements of the charge to basic acts required to constitute the offense. The purpose of this inquiry is to determine whether the defendant understands the law in relation to the facts.

■ At some point the judge will ordinarily ask the defendant if he understands the charge. See, e. g., the colloquy in State v. Hackett, supra, 201 N.W.2d at 489. However, if under the whole record the defendant's understanding of the charge is apparent, a failure to ask him if he understands the charge is not sufficient to vitiate the conviction. State v. Sargent, supra. Similar principles apply under Rule 11. Compare United States v. Cody, 438 F.2d 287, 288 (8 Cir. 1971), cert. denied, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 ("The trial court must inquire directly of defendant as to his 'understanding' "), with Eagle Thunder v. United States, 477 F.2d 1326 (8 Cir. 1973), cert. denied, 414 U.S. 873, 94 S.Ct. 142, 38 L.Ed.2d 92 (where the charge was fully explained to a 33 year old defendant with three prior felony convictions, represented by counsel, the plea was properly taken despite failure to ask defendant if he understood the charge).

Under this requirement, "the record must show that the trial judge personally asked the proper questions and received answers from the accused indicating his awareness of the charge against him * * *. The judge may not assume from circumstances within his knowledge that the accused is fully aware of [the nature of the charge]." United States v. Thomas, 468 F.2d 422 (10 Cir. 1972), cert. denied, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599.

To satisfy the second aspect of the first Sisco requirement the record must show the trial judge personally made sufficient inquiry of the defendant to elicit responses demonstrating the defendant's understanding of the nature of the charge against him.

■ II. *The second Sisco determination.* The second Sisco requisite, the determination that the defendant understands the penal consequences of his guilty plea, also has two aspects. The trial judge through interrogation must establish that the defendant is aware of the possible maximum punishment, any mandatory minimum punishment, and any enhanced punishment for the offense charged, and he must insure the defendant understands he waives his constitutional trial rights by a guilty plea.

This requirement has been involved in two of our recent cases. They are State v. Reppert, supra, and State v. Bell, 210 N.W.2d 423 (Iowa 1973). In Reppert a conviction was set aside because the record did not show the defendant was aware of the possible maximum punishment for the offense charged. In Bell we upheld the defendant's conviction where the record showed he was aware he would give up his rights to jury trial and to confront his accusers despite the trial judge's failure to discuss these rights with him at the time his plea of guilty was received.

■ From Reppert it is clear the record must show defendant's plea of guilty was entered with an awareness of the possible maximum penalty for the offense. This can be accomplished by telling the defendant the possible maximum sentence prior to his plea or having the defendant himself state his understanding as to the possible maximum sentence.

■ From Bell it is clear the trial judge must determine the defendant is aware he waives his fundamental trial rights by pleading guilty and, if his plea is accepted, stands convicted as if found guilty by a jury. The prerequisites of a valid waiver must affirmatively appear in the record. Boykin v. Alabama, supra.

In Boykin the United States Supreme Court said:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. [citation]. Second, is the right to trial by jury. [citation]. Third, is the right to confront one's accusers.

[citation]. We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279–280.

Thus, under Boykin the record must show an effective waiver by the defendant of at least three constitutional rights—the privilege against self-incrimination, the right to trial by jury, and the right to face one's accusers.

Standard 1.4(b), American Bar Association Project on Standards for Criminal Justice, Pleas of Guilty, imposes a duty on the trial judge to advise the defendant that by his guilty plea he waives his right to trial by jury. It does not require the judge to inform the defendant of his privilege against self-incrimination and his right of confrontation. The standard was promulgated before Boykin was decided by the United States Supreme Court. Although we adopted Standard 1.4 in State v. Sisco, supra, after the Boykin decision, we were not faced in Sisco with a question as to the constitutional sufficiency of Standard 1.4(b).

In August 1972 the American Bar Association attempted to answer this question in adopting minimum standards on The Function of the Trial Judge. Standard 4.2(a)(ii) requires the judge to address the defendant personally to determine "the defendant understands that, by pleading guilty * * * he waives certain constitutional rights, primarily his right to persist in a plea of not guilty and remain silent, his right to a trial by jury and his right to be confronted with the witnesses against him." In the Commentary the drafters attribute the broader scope of the required cautions to Boykin v. Alabama, supra, observing they appear to be minimum requirements under that decision.

The United States Supreme Court Advisory Committee on Federal Rules of Criminal Procedure also sought to answer this question in amendments proposed to Rule 11. These amendments were adopted by the Supreme Court and reported to Congress pursuant to 18 U.S.C. §§ 3771, 3772. 62 F.R.D. 271 (1974). Congress recently extended the time for its action on the amendments to August 1, 1975. They are scheduled to become effective on that date unless Congress acts before then to change or reject them.

Rule 11 as amended includes a requirement that the trial judge inform the defendant and determine that he understands:

"(c) * * *

"(1) * * *

"(2) * * *

"(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made; and

"(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial." 62 F.R.D. at 275.

The Advisory Committee Note says these subdivisions specify the constitutional rights waived by a plea of guilty (or nolo contendere under federal practice) and are designed to satisfy the requirements of Boykin. The committee asserts subdivision (c)(3) is intended to require the judge to inform the defendant of and determine that he understands his privilege against self-incrimination, which "is best explained in terms of his right to plead not guilty and to persist in that plea if it has already been made." 62 F.R.D. at 280. The committee also says subdivision (c)(4) "assumes that a defendant's right to have his guilt proved beyond a reasonable doubt and the right to confront his accusers are best explained by indicating the right to trial is waived." Ibid. The committee adds this significant comment:

"In explaining to a defendant that he waives his right to trial, the judge may want to explain some of the aspects of trial such as the right to confront witnesses, to subpoena witnesses, to testify in his own behalf, or, if he chooses, not to

testify. What is required in this respect, to conform to Boykin is left to future case-law development." Id. at 280.

■ Since deciding Sisco we have recognized on several occasions that the record of a guilty plea proceeding must, in light of Boykin, demonstrate that the defendant was actually aware of his three fundamental constitutional trial rights when he tendered his guilty plea. See, e. g., State v. Reppert, supra, 215 N.W.2d at 304;. State v. Kobrock, 213 N.W.2d 481, 482–483 (Iowa 1973); State v. Bell, supra; State v. Abodeely, 179 N.W.2d 347, 352 (Iowa 1970), cert. denied, 402 U.S. 936, 91 S.Ct. 1617, 29 L.Ed.2d 104.

In State v. Abodeely, supra, we said:

"Boykin v. Alabama undoubtedly requires that in all pleas of guilty in state courts the record must disclose defendant voluntarily and understandably entered his plea of guilty. Further, it must be shown defendant knew he was waiving the privilege against self-incrimination, the right to trial by jury and the right to confront one's accusers. But the United States Supreme Court in Boykin did not attempt to impose a rule of criminal procedure mandating the manner by which the record was to be developed. This was left to the state courts and was met in Iowa by State v. Sisco, supra." 179 N.W.2d at 352.

Under Sisco we have not held the trial judge must by personal colloquy inform the defendant of the three fundamental constitutional trial rights waived by his plea of guilty. For example, in State v. Bell, supra, we refused to upset a conviction for failure of the trial judge to tell a defendant what fundamental trial rights he waives by pleading guilty when the record otherwise showed the defendant was aware of them. Cf. Davis v. United States, 470 F.2d 1128 (3 Cir. 1972); Wade v. Coiner, 468 F.2d 1059 (4 Cir. 1972); McChesney v. Henderson, 482 F.2d 1101 (5 Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102.

A case from the fifth circuit, United States v. Frontero, 452 F.2d 406 (5 Cir. 1971), has been read and followed in some jurisdictions as holding Boykin does not even require a showing of the accused's awareness of the basic constitutional rights waived by his plea of guilty. Subsequent fifth circuit cases demonstrate that jurisdiction does indeed read Boykin as we have, requiring the record to demonstrate the defendant was aware of the rights when he tendered his plea. See United States v. Escandar, 465 F.2d 438 (5 Cir. 1972); United States v. Gearin, 496 F.2d 691 (5 Cir. 1974).

The convictions in the present case will of course be tested by that standard.

However, we believe this is an appropriate case to determine whether we should henceforth adopt the procedure contemplated by A.B.A. Standard 4.2(a)(ii), Functions of the Trial Judge, and the proposed amendment to Rule 11. Several jurisdictions have concluded that procedure, although not constitutionally mandated, should be adopted. See, e. g., In re Tahl, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (1969); Carvalho v. Olim, 519 P.2d 892 (Haw.1974); McCall v. State, 9 Md.App. 191, 263 A.2d 19 (1970); Commonwealth v. Morrow, 296 N.E.2d 468 (Mass.1973); People v. Jaworski, 387 Mich. 21, 194 N.W.2d 868 (1972); Smith v. Oklahoma City, 513 P.2d 1327 (Okla.Crim.App.1974). We agree. By taking the few minutes required to engage in this colloquy, the trial judge can assure the defendant is on notice of the basic rights waived by his guilty plea and obviate the burden and necessity upon later review of searching the entire record for evidence of that knowledge.

For the future, in all guilty plea proceedings conducted after the date this opinion is filed, we hold the trial judge must comply with A.B.A. Standard 4.2(a)(ii), Functions of the Trial Judge. That is, the judge must by personal colloquy inform the defendant of his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers, and determine that

he understands he waives these rights by pleading guilty.

III. *The third and fourth Sisco determinations.* As previously noted, the third Sisco requirement, the determination of voluntariness of the plea, is not directly involved here. The fourth requirement, the determination of a factual basis for the plea, is explained in Ryan v. Iowa State Penitentiary, supra, and that discussion will not be repeated here. See State v. Hansen, 221 N.W.2d 274 (Iowa 1974), filed August 28, 1974; United States v. Untiedt, 479 F.2d 1265 (8 Cir. 1973).

IV. *The convictions involved in this case.* We now apply these principles to the record of the two convictions challenged by petitioner in this postconviction proceeding.

A. *The first charge.* The material portion of the court's colloquy with petitioner at the time of his plea of guilty to the first charge of larceny of a motor vehicle was as follows:

THE COURT: The law provides that you may ask for time before answering this charge or you may waive that time and answer the charge at this time. What is your wish?

THE DEFENDANT: Waive the time and ask for it now.

THE COURT: You wish to enter a plea at this time?

THE DEFENDANT: Yes, sir.

THE COURT: You may state your plea.

THE DEFENDANT: Guilty.

THE COURT: Are you aware and have you discussed with your counsel by entering a plea of guilty you are waiving your right to a jury trial?

THE DEFENDANT: No. I wasn't aware of that. I wanted to do that anyhow.

THE COURT: You are specifically charged with larceny of a motor vehicle, a certain Corvette, the property of Loren Jordahl and alleged to have done this on the 19th day of August, 1971. Do you deny those facts in any way?

THE DEFENDANT: No.

THE COURT: The charge is true?

THE DEFENDANT: Yes.

THE COURT: Has anyone induced you or made any promises to you to enter a plea of guilty to this charge?

THE DEFENDANT: No.

THE COURT: You feel you are doing it freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Are you aware of the penalties of this offense?

THE DEFENDANT: Well, I know it carries up to 10 years or $1,000 or both up to 10 years and $1,000.

THE COURT: Are you satisfied with your counsel?

THE DEFENDANT: Yes.

THE COURT: And you do at this time, as I understand, wish to enter a plea of guilty to the charge?

THE DEFENDANT: Yes.

THE COURT: Very well, the Court will accept your plea of guilty. * * *."

Petitioner challenges this conviction on the basis of the first, second, and fourth Sisco requirements. We believe his challenge is good on each basis.

As to the first, the charge was explained to him in the language of the county attorney's information. Whereas this would effect minimal compliance with the first aspect of the first Sisco requirement, the record does not show he in fact understood the charge.

There was no inquiry into his understanding and it does not otherwise appear. This deficiency is sufficient to require reversal of the conviction. United States v. Cantor, 469 F.2d 435 (3 Cir. 1972); United States v. Thomas, supra; McAllister v. State, 54 Wis.2d 224, 194 N.W.2d 639 (1972); cf. Peterson v. State, 54 Wis.2d 370, 195 N.W.2d 837 (1972).

As previously noted, compliance with the second Sisco requirement is measured in this case without regard to our adoption today of A.B.A. Standard 4.2(a)(ii), Functions of the Trial Judge. The record shows petitioner was aware of the possible maximum sentence and was informed he would waive his right to jury trial by his plea of guilty. Although this advice was arguably sufficient to make him aware of his right to confront his accusers, the record does not show he was aware of his privilege against self-incrimination. Consequently, we are unable to say he voluntarily and intelligently waived this right in entering his plea of guilty. Boykin v. Alabama, supra; see Advisory Committee Note, supra, 62 F.R.D. at 280.

As to the fourth Sisco requirement, the judge did not determine a factual basis for the plea. He essentially followed the procedure condemned in Ryan v. Iowa State Penitentiary, supra. If this were the only flaw in the proceeding, the case would be remanded for that determination with the status of petitioner's conviction dependent on its outcome. However, because of the court's failure of substantial compliance with the first and second Sisco requirements, petitioner's conviction on this charge must be vacated and a new plea taken.

B. *The second charge.* The material portion of the trial judge's colloquy with petitioner on his plea of guilty to the second charge was as follows:

COUNTY ATTORNEY: Your Honor, this is the matter of the arraignment of the defendant, Gordon A. Brainard, on a charge of larceny of a motor vehicle. He is present here in court with his attorney for the arraignment.

MR. BRANSTAD: We have a copy of the Information, Your Honor. The defendant is correctly named Gordon A. Brainard. We have read the Information and he is ready to plead at this time. He waives formal arraignment.

THE COURT: You are correctly named, Gordon A. Brainard?

THE DEFENDANT: Yes.

THE COURT: You have had an opportunity to consult with your counsel?

MR. BRANSTAD: He asked you if you had a chance to talk to me.

THE DEFENDANT: Yes.

THE COURT: How many times have you talked with him?

THE DEFENDANT: Oh, two or three times.

THE COURT: You understand the nature of the charge?

THE DEFENDANT: Yes.

THE COURT: You understand the possible penalty in the event that you are convicted—

THE DEFENDANT: Yes.

THE COURT: —by a jury or found guilty by a plea of guilty.

THE DEFENDANT: Yes.

THE COURT: What is the penalty?

\* \* \* \* \* \*

THE DEFENDANT: Ten years in the penitentiary.

THE COURT: Has there been any talk with you by law officers which have put any pressure upon you?

THE DEFENDANT: No.

THE COURT: Any promises made to you?

THE DEFENDANT: No.

THE COURT: You understand you are entitled to a jury trial?

THE DEFENDANT: Yes.

THE COURT: And if you stood trial by a jury the State would be required to prove by evidence beyond a reasonable doubt that on the 28th day of October, 1971 you did steal and take away a Chevrolet automobile belonging to one Buelah Ladd; do you understand that?

THE DEFENDANT: Yes.

THE COURT: You further understand that the Court will not accept a plea of

guilty from you unless it is freely and voluntarily entered upon your part?

THE DEFENDANT: Yes.

THE COURT: And the Court will not accept a plea of guilty unless you feel that you are guilty; do you understand that?

THE DEFENDANT: Yes.

THE COURT: You understand you have additional time in which to enter a plea of either guilty or not guilty?

THE DEFENDANT: Yes.

THE COURT: The Court will give you time if you desire.

THE DEFENDANT: I'd just as soon plead today.

THE COURT: What is your plea?

THE DEFENDANT: Guilty.

THE COURT: Is there any doubt about it in your own mind?

THE DEFENDANT: No.

THE COURT: Tell me what you did.

THE DEFENDANT: I took the car from—it was setting down the street parked in front of the house and I took it.

THE COURT: Did you intend to keep it?

THE DEFENDANT: Oh, for awhile, until I found—decided to do something else.

THE COURT: Where did you take it after—

THE DEFENDANT: Pardon me?

THE COURT: Where did you take it? From Forest City, where did you go with it?

THE DEFENDANT: I was picked up over in Cresco. The taillights were out, and that's why they stopped me.

THE COURT: Where were you going?

THE DEFENDANT: I'm not for sure myself. I was just going—gettin' away from—

THE COURT: Did you intend to convert this car to your own use?

THE DEFENDANT: You mean—

THE COURT: Sell it?

THE DEFENDANT: No.

THE COURT: Did you intend to bring it back?

THE DEFENDANT: No.

THE COURT: Were you employed at the time?

THE DEFENDANT: Yes.

THE COURT: Where?

THE DEFENDANT: On a farm up by Buffalo Center.

THE COURT: What day of the week was this?

THE DEFENDANT: This was Wednesday night, or Thursday morning it would have been, early morning.

THE COURT: Were you going to work the next day?

THE DEFENDANT: Well, I'd been down here to Forest City, my younger brother was home on leave visiting my sister. I was at my sister's staying at my sister's.

THE COURT: Did you plan to go back to work the next day?

THE DEFENDANT: Well, I had had —No, not the next day. I had had a couple days off to visit my younger brother while he was home on leave from the Air Force, and I was planning on going back Thursday night.

THE COURT: What were you going to do with the car then?

THE DEFENDANT: Well, that was before I took the car.

THE COURT: I see.

Mr. Branstad, is there any reason why the Court should not accept a plea of guilty in this case?

MR. BRANSTAD: I know of no reason, Your Honor.

THE COURT: Mr. Stipp, do you know of any reason?

COUNTY ATTORNEY: No, I don't, Your Honor?

THE COURT: All right, the plea of guilty will be accepted.

Although the colloquy was more extensive on this occasion, we do not believe it complied with the first, second, and fourth Sisco requisites.

The record as to the first and fourth requisites is related. In the trial judge's colloquy with petitioner on his intent when he took the car the record is ambiguous. At one point petitioner was asked if he intended to keep the car. He responded, "Oh, for awhile, until I found—decided to do something else." He later said he neither intended to sell it nor to bring it back. Then the colloquy became utterly confused, and the judge abandoned the line of inquiry on an inconclusive note. The essential question as to petitioner's intent is whether he intended to deprive the owner permanently of his automobile. The record does not show he understood the charge in that respect, nor does it show a factual basis for finding he had that intent. If he did not have that intent he was not guilty of larceny of a motor vehicle, although he may have been guilty of the lesser offense of operating a motor vehicle without the owner's consent under Code § 321.76. Compare State v. Hawkins, 203 N.W.2d 555 (Iowa 1973) and State v. Everett, 157 N.W.2d 144 (Iowa 1968), with In re Champion, 221 N.W.2d 773 (Iowa 1974), filed September 18, 1974. The distinction is reflected in a nine-year difference in the maximum penalties provided for the respective offenses.

Petitioner's understanding of this aspect of the charge, in light of its close relationship with the lesser charge, is one of the realities mandated by McCarthy v. United States, supra, 394 U.S. at 467, 89 S.Ct. at 1171, 22 L.Ed.2d at 426, footnote 20. As explained in Division I, the extent of the colloquy sufficient to fulfill the trial judge's duty to explain the charge and to ascertain the accused's understanding of it depends upon the particular case. In this case, the colloquy fell short of the Sisco standard.

At most petitioner admitted a wrongful taking of the owner's car, but the colloquy did not reveal either his understanding of the charge or a factual basis for determining he took the car with an intent to steal. There is no ground for holding the trial judge determined a factual basis from any other source. He did not then have a presentence report; he did not inquire of the prosecutor; and no minutes of testimony were endorsed on the county attorney's information. See State v. Hansen, supra; Ryan v. Iowa State Penitentiary, supra. The record does not meet the first and fourth Sisco standards.

As to the second Sisco requirement, the record shows petitioner was aware of the possible maximum sentence and was informed he would waive his right to jury trial by his plea of guilty. Although again arguably aware of his right to confront his accusers, the record does not show he was aware of his privilege against self-incrimination. The second Sisco requisite was not met.

The postconviction court erred in refusing to set aside this conviction. Petitioner is also entitled to plead anew to this charge.

V. *Petitioner's other contentions.* We have considered petitioner's other contentions, including his claim that the record in each instance raised a question as to his mental competency to enter a plea, and we find them without merit.

VI. *Recommended procedure for conducting a guilty plea proceeding.* Our cases demonstrate the desirability of recommending to trial judges a procedure capable of adaptation and use in receiving guilty pleas. Although we have emphasized and continue to do so that judges need not follow a ritual in making the necessary determinations for acceptance of guilty pleas, use of a general outline or checklist could avoid inadvertent omission of one or more of the essential determinations. In United States v. Cody, supra, the court recommended a checklist from the Bench Book for United States

Judges §§ 1.05.2–1.05.3 (1969). We referred to it with approval in State v. Hansen, supra, 221 N.W.2d at 278. We have conformed it to our practice and incorporate it in this opinion in the hope it will assist trial judges in conducting guilty plea proceedings.

■■■ This is a recommendation and not a mandate. It is only an outline of areas of appropriate inquiry in guilty plea proceedings. It is not intended to be exclusive or all-inclusive.

1. Before accepting a guilty plea:

(a) keep and preserve a verbatim record of the proceeding;

(b) explain and ask defendant if he understands:

(1) that the court need not accept his plea unless satisfied of defendant's guilt and that defendant fully understands his rights;

(2) that if he pleads not guilty he would be entitled to a speedy and public trial by jury;

(3) that counsel would be provided at public expense if he is indigent;

(4) that if he pleads not guilty he has a privilege against self-incrimination, and he would not be required to testify at trial;

(5) that at such trial the state would have to confront him with the witnesses upon whose testimony it relied to obtain a conviction, and he would have the right to cross-examine these witnesses;

(6) that at such trial he would be presumed innocent until such time, if ever, as the State established his guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt;

(7) that at such trial he would be entitled to compulsory process to call witnesses;

(8) the nature and essential elements of the charge to which he is pleading;

(9) the range of penalties to which he is subjecting himself by his plea including the maximum sentence;

(c) ask the prosecuting attorney and defense counsel:

(1) if the plea is a result of prior plea discussions and a plea agreement;

(2) if it is, what agreement has been reached;

(3) if the prosecuting attorney has agreed to seek charge or sentence concessions, advise the defendant that the recommendations of the prosecuting attorney are not binding on the court;

(d) ask defendant:

(1) if any threats or promises have been made to induce him to plead guilty;

(2) if he believes there is any understanding or if any predictions have been made to him concerning the sentence he will receive (advise him the court is not bound by such understanding or predictions);

(3) if he committed the offense;

(4) just what he did (obtain admissions if possible of necessary acts, knowledge, and intent);

(5) if he still wishes to plead guilty;

(6) any additional question required by the circumstances;

(e) establish and identify for the record a factual basis for the plea by one or more of the following:

(1) by inquiry of the defendant as in 1(d)(4);

(2) by inquiry of the prosecuting attorney;

(3) by examining the presentence report;

(4) by examining the minutes attached to the indictment or county attorney's information;

(5) by some equivalent alternative;

(f) ask defense counsel if he knows any reason why defendant should not plead guilty;

(g) make finding, if appropriate, that defendant:

(1) is acting voluntarily;

(2) fully understands his rights;

(3) fully understands the consequences of his plea; and

(4) that there is a factual basis for the plea;

2. accept or reject plea;

3. if plea is rejected, or if defendant refuses to plead, enter a plea of not guilty and set date for trial;

4. if plea if accepted, enter an order to that effect, finding that the plea is voluntary, intelligent, has a basis in fact, and is therefore accepted.

Trial judges must remain aware no two cases are exactly alike. What is sufficient in one guilty plea proceeding may be insufficient in another. A guilty plea is "a grave and solemn act to be accepted only with care and discernment * * *." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970). Substance controls form. The reality of the specific situation dictates the procedure to be followed.

One procedure cannot be right for every case; yet a right procedure must be followed in every case. "The history of American freedom is, in no small measure, the history of procedure." Malinski v. New York, 324 U.S. 401, 414, 65 S.Ct. 781, 787, 89 L.Ed. 1029, 1037 (1945) (separate opinion by Justice Frankfurter). The test of any guilty plea procedure is whether it establishes on the record that the guilty plea has been voluntarily and intelligently entered and that it has a factual basis.

Reversed and remanded.

MASON, RAWLINGS and HARRIS, JJ., concur.

REYNOLDSON, J., concurs specially.

REES, J., MOORE, C. J., and LeGRAND and UHLENHOPP, JJ., dissent.

REYNOLDSON, Justice (concurring specially).

I concur in the majority opinion except that portion of division IV–B indicating defendant's statements raised a question whether he had the requisite intent for a charge of larceny of a motor vehicle. Defendant's responses, in my opinion, were sufficient to show he had that intent. Nor do I concede, as the opinion intimates, that the crime of operating a motor vehicle without the owner's consent is a lesser included offense in the crime of larceny of a motor vehicle.

REES, Justice (dissenting).

I respectfully dissent.

The majority today seeks to buttress and amplify the four guidelines we first laid down in State v. Sisco, 169 N.W.2d 542 (Iowa 1969) with a new suggested procedure for guilty plea proceedings utilizing a checklist containing some thirty specific points of inquiry trial courts might pursue before passing on the propriety of a guilty plea. It is apparently the majority's belief the checklist will: (1) insure guilty plea proceedings are conducted in accordance with the Sisco guidelines and constitutional due process; (2) facilitate our review of convictions based on guilty pleas by causing to be spread on the record proof the plea has been voluntarily and intelligently entered. I do not share that belief.

I. While my disagreement with the majority lies principally in the wisdom and advisability of the use of the checklist, I feel some attention should be given the majority's reinterpretation and apparent extension of the first two guidelines for guilty plea proceedings laid down in Sisco.

The first Sisco guideline requires the trial judge to personally address the defendant and determine whether he understands the charge brought against him. Compliance with this guideline in the majority's view will hereafter require a record showing the

trial judge specifically explained the legal elements of the charge to the defendant and expressly inquired of him whether he understands the charge. Implicit in this requirement is the majority's apparent belief a guilty plea cannot be knowing and voluntary unless the defendant: (a) is apprised of the specific elements of his offense; (b) expressly states he understands them. In my opinion this constitutes a rather significant and unfortunate departure from our previous position on the subject of compliance with the first *Sisco* guideline and the record showing necessary to establish the validity of a guilty plea.

As noted by the majority, we have on many occasions said compliance with the *Sisco* guidelines does not require a ritualistic inquiry of the defendant concerning the nature and consequences of his plea but merely must be meaningful and substantial. State v. Sisco, *supra*, 169 N.W.2d at p. 551; State v. Reppert, 215 N.W.2d 302, 304–305 (Iowa 1974); State v. Bledsoe, 200 N.W.2d 529, 531 (Iowa 1972). Before today we have consistently held meaningful and substantial compliance with the first *Sisco* guideline does not require the trial judge to explain to the defendant the specific elements of the crime charged, at least where the name given the crime is sufficiently descriptive of the nature thereof. See State v. York, 210 N.W.2d 608 (Iowa 1973); State v. Sargent, 210 N.W.2d 656 (Iowa 1973); Michels v. Brewer, 211 N.W.2d 293, 296 (Iowa 1973); State v. Hackett, 201 N.W.2d 487, 490 (Iowa 1972). In my judgment, our past position remains the better one and the reasoning expressed in the cases cited comports with the reality a trial judge need not always advise the defendant of each and every statutory element of the crime with which he is charged in order to insure he understands the basic *nature* of the offense. While I readily concede explanation of the specific elements of a crime is commendable and may well be material on the issue whether a defendant understood the charge against him in a given case, the procedure should not, as the majority holds,

be looked upon as a *sine qua non* for the valid acceptance of all guilty pleas. As it is, the inevitable practical effect of the majority's position in this regard is that the court will soon be faced with the prospect of upsetting guilty plea convictions of thrice-convicted burglars for, say, the failure of a trial judge to explain one of the elements of burglary consists of an unlawful entry. This prospect, I submit, only serves to illustrate how far afield we are going and how removed we are tending from the basic inquiry whether a plea is knowing and voluntary.

The second aspect of the first *Sisco* guideline elaborated upon by the majority requires the trial judge to expressly inquire of the defendant whether he understands the charge explained to him. Our previous position in this regard, taken as well by at least two circuit courts of appeal, has been that if under the whole record the defendant's understanding of the charge is apparent, a failure on the trial judge's part to expressly ask him if he understands the charge does not vitiate the conviction. State v. Sargent, *supra*. See also Eagle Thunder v. United States, 477 F.2d 1326 (8 Cir. 1973); Paradiso v. United States, 482 F.2d 409 (3 Cir. 1973). That position surely provided ample assurance no guilty plea will be upheld absent a record showing the defendant understood the nature of the charge brought against him. The majority's holding a specific inquiry as to the defendant's understanding should be hereafter required does little in my estimation to increase that assurance, and instead stands merely as an exaltation of form over substance. As it is, the fact a defendant states he understands the charge brought against him can hardly be conclusive on our determination he did indeed understand the charge. To make that determination, we must in the future as we have in the past under *Sargent* look to all the circumstances of a given case.

The second *Sisco* guideline discussed at length by the majority requires the trial judge to personally address the defendant

and determine whether he is aware of the consequences of his plea. Citing Boykin v. Alabama, the majority holds compliance with this guideline will now require a record showing the defendant understands that by pleading guilty he waives three constitutional rights: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; (3) the right to confront the witnesses against him. Implicit in this requirement is the majority's apparent belief a guilty plea cannot be voluntary and intelligent unless the defendant is apprised specifically of at least these three constitutional rights he waives in so pleading and that an inquiry along that line is constitutionally mandated by Boykin. This, I submit, is not self-evident.

A number of federal circuit courts dealing with postconviction attacks on guilty pleas have concluded neither Boykin nor consideration of due process requires that a defendant be informed specifically of these rights which are waived by a guilty plea or that the waiver of the rights is a "consequence" of which defendant must be informed before the court is justified in accepting his plea. Wade v. Coiner, 468 F.2d 1059 (4 Cir. 1972); McChesney v. Henderson, 482 F.2d 1101 (5 Cir. 1973), cert. den., 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102; United States v. Sherman, 474 F.2d 303 (9 Cir. 1973); Davis v. United States, 470 F.2d 1128 (3 Cir. 1972); United States v. Frontero, 452 F.2d 406 (5 Cir. 1971); Hansen v. Mathews, 424 F.2d 1205 (7 Cir. 1970).

Numerous state courts, including our own, have taken a similar position, opting for the so-called "less strict" reading of Boykin. State v. Bell, 210 N.W.2d 423 (Iowa 1973); People v. Kuchulan, 390 Mich. 701, 213 N.W.2d 95 (1973); Heffley v. Warden, 89 Nev. 573, 516 P.2d 1403 (1973); Davis v. State, 277 So.2d 300 (Fla.App. 1973); Merrill v. State, 206 N.W.2d 828 (S.D.1973); Edwards v. State, 51 Wis.2d 231, 186 N.W.2d 193 (1973); State v. Phillips, 108 Ariz. 332, 498 P.2d 199 (1972); People v. Reeves, 50 Ill.2d 28, 276 N.E.2d 318 (1971); State v. Piacella, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971); Raisley v. Sullivan, 8 Or.App. 332, 493 P.2d 745 (1972); Miracle v. Peyton, 211 Va. 123, 176 S.E.2d 339 (1970); Commonwealth v. Morrow, 296 N.E.2d 468 (Mass.1973); State v. Reed, 187 Neb. 792, 194 N.W.2d 179 (1972).

The Supreme Court in a decision handed down after Boykin casts considerable doubt on the constitutional necessity the three rights must be specifically enumerated and waived. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). See Notes, 7 Lincoln L.Rev. 137, 187 (1973), and 1974 Duke L.J. 149 for an argument Alford's holding a trial court may accept a guilty plea accompanied by protestations of innocence makes a Fifth Amendment waiver no longer essential to a valid guilty plea.

The common thread running through the decisions of these courts opting for the less restrictive reading of Boykin is the belief a guilty plea may be intelligent and voluntary and therefore acceptable consistent with due process despite the absence of a record showing the three constitutional rights enumerated above were specifically mentioned by the trial judge. I subscribe to that belief and accordingly disagree with what seems to me the majority's unnecessary modification of the second Sisco guideline. While I do feel the trial judge should be encouraged to advise the defendant of the various constitutional rights he waives by pleading guilty, I cannot keep company with the majority's conclusion a failure of the record to show a specific enumeration of same gives rise to a presumption the guilty plea was not voluntary or intelligent. My position on this issue is that expressed by the Eighth Circuit in Todd v. Lockhart, 490 F.2d 626, 628 (8 Cir. 1974), holding that while a spreading on the record of a colloquy between the trial judge and defendant concerning the three rights might be material in determining the validity of a guilty plea in a given case, the absence thereof need not necessarily be conclusive as a finding the guilty plea was involuntary and unintelligent in all cases.

II. I think it evident from the majority's discussion of the post-*Sisco* history in this jurisdiction that the fears expressed in the special concurring opinion in *Sisco* have been realized and our review of guilty plea convictions in Iowa has become marked by an inquiry into not what the defendant *knew* at the time he entered his plea, but rather into what the trial judge *told* him at that time. It seems to me this preoccupation with the particulars of the trial judge's conduct in guilty plea proceedings constitutes a rather subtle and unfortunate shift in the focus of the guilty plea inquiry away from the defendant and his understanding, which serves only to obfuscate the basic issue whether the plea was knowingly and voluntarily entered. The problem thus created for the reviewing court will in my judgment be merely exacerbated and compounded by the checklist approved by the majority today.

I would hasten to make clear at this point that while my objection to the new recommended procedure for guilty plea proceedings centers in part on the majority's amplification of the first two *Sisco* guidelines, it is not directed so much to the content of the checklist as it is to policy considerations, and the fact the very existence of a checklist cannot but convey the impression non-literal compliance therewith by the trial courts of this state will in and of itself constitute sufficient grounds for the invalidation of guilty plea convictions. Unquestionably the number of often frivolous attacks on guilty plea convictions surfacing in the wake of *Sisco* has heavily taxed the resources of this court and the criminal justice system generally in Iowa. While it is difficult to measure the impact of the new checklist on this problem, it does seem doubtful the addition of thirty-odd points of inquiry to the four *Sisco* guidelines will diminish the number of these frivolous attacks and consequently the burden on the system.

I of course recognize the basic issue in this regard is due process, not the burden on the judiciary, but cannot avoid concluding the new procedures will only unnecessarily increase the latter without furthering the former. For while on the one hand non-literal compliance with the checklist will give rise to the presumption a guilty plea was improvidently accepted, and thereby encourage more frivolous appeals by defendants whose pleas otherwise satisfied the *Sisco* due process standards, on the other hand, literal compliance will ironically serve as presumptive evidence the plea was knowing and voluntary, even though such compliance may have been nothing more than a *pro-forma* ritualistic parrot-like recital by the trial court of the points contained therein, without any further investigation into the specific circumstances of a given defendant's plea.

The sentiment first expressed in the special concurrence in *Sisco* has never been more pertinent:

"We are here adopting a mere ritual as an easy and pushbotton method of deciding in advance—without reference to the particular circumstances—when a plea of guilty fails to meet constitutional standards. I am fully aware the opinion announces that the formula used should not become 'ritualistic', but despite this admonition the inevitable result is just that.

"My objection is *not* (emphasis added) to the standards imposed but rather to the method which the opinion says *must* be followed in order to demonstrate they have been met. This completely disregards the real issue: was the plea voluntary; was it made with the full knowledge of the consequences; and was it made realizing the punishment which could be imposed? Apparently this now becomes of trifling importance. The inquiry no longer is what did the defendant *know* at the time he entered his plea, but what did the trial court *tell* him at that time. Even if he were to be fully aware of every fact the trial court could point out, a defendant would under this opinion nevertheless be entitled to have his plea set aside *because his information did not*

come from a particular source." *Sisco*, 169 N.W.2d at p. 552 (special concurring opinion).

III. The instant case involves two guilty plea convictions. The majority concludes the first of these must be set aside for the trial court's failure to comply with the first, second and fourth *Sisco* guidelines in that the trial judge did not: (a) ask defendant whether he understood the charge; (b) advise him specifically of the three rights enumerated *supra* he waived by pleading guilty. Since I have taken the position neither the pronouncements in *Boykin*, considerations of due process, nor the rationale of our prior holdings require a record showing these two procedures were specifically followed by the trial judge as a prerequisite for proper acceptance of a guilty plea, I would affirm the conviction on the ground the guilty plea was knowing and voluntary on the basis of the entire record.

The majority reverses the second conviction on the ground the defendant was not apprised of the specific elements of the charge brought against him. Inasmuch as I believe compliance with the first *Sisco* guideline need not entail a recital by the trial judge of the specific elements of the crime charged, I would uphold the conviction on the ground the record shows the defendant did in fact understand the nature of the charge against him and otherwise entered a voluntary and intelligent plea of guilty.

I would affirm the trial court.

MOORE, C. J., and LeGRAND and UHLENHOPP, JJ., join this dissent.