STATE of Iowa, Appellee,

v.

Willis Elbert MORRIS, Appellant.

No. 02–1033.

Supreme Court of Iowa.

April 7, 2004.

Linda Del Gallo, State Appellate Defender, and Robert P. Ranshau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Thomas J. Ferguson, County Attorney, James Katcher, Assistant County Attorney, for appellee.

PER CURIAM.

Defendant, Willis Elbert Morris, appeals from judgment and sentence convicting him of second-degree theft as a habitual offender in violation of Iowa Code sections 714.2(2), 902.8, and 902.9(3) (2001). The alleged theft involved a motor vehicle. He contends that the State failed to produce sufficient evidence that he intended to permanently deprive the owner of possession of the motor vehicle, an essential element of theft involving a motor vehicle. The court of appeals agreed with that contention and reversed defendant's conviction for theft. After reviewing the record and considering the arguments presented, we affirm the decision of the court of appeals. The judgment of the district court is reversed and remanded.

On October 6, 2001, at 4:30 a.m., Brian Gonzales started the engine on his truck parked on the street in front of his home. He intended to let it warm up before driving to work. Gonzales reentered his home leaving the engine running. Shortly thereafter, he heard a "revving" of the truck's

engine, looked outside, and saw someone driving his truck away.

Gonzales called Waterloo police and reported the taking of the vehicle. Officer Aaron McClelland arrived at the scene and took the necessary information from Gonzales, including a description of the truck. The officer then put out an "attempt to locate" call to Waterloo patrol officers for the location of a brown Ford Ranger pickup truck.

Approximately thirty minutes later, McClelland came upon the missing truck about five miles from Gonzales's residence. The truck was being driven in the opposite direction from that of the officer's vehicle. McClelland turned his police vehicle around and gave pursuit. The person driving Gonzales's truck stopped the vehicle, got out, and fled on foot toward nearby houses. Officer McClelland radioed for backup and a K–9 unit responded. One of the dogs alerted police to the presence of a person hiding on a porch of a house. McClelland identified this person as the man who had fled from the truck. That person was ultimately determined to be defendant, Willis Elbert Morris.

Defendant was arrested and charged with second-degree theft pursuant to Iowa Code section 714.2(2) (the motor vehicle version), a class "D" felony. He was also charged as a habitual offender, pursuant to Iowa Code section 902.8. The second-degree theft charge was submitted to the jury along with the lesser-included offense of operating a motor vehicle without the owner's consent in violation of Iowa Code section 714.7. The jury found defendant guilty of second-degree theft. He ultimately stipulated to the prior offenses on which the habitual-offender sentencing enhancement was based.

The court of appeals, relying on our decision in *State v. Schminkey*, 597 N.W.2d 785 (Iowa 1999), concluded that the mere fact that defendant took Gonzales's pickup truck without consent of the owner did not give rise to an inference that he intended to permanently deprive the owner of the vehicle. The court further concluded that the evidence, viewed in its entirety, was insufficient to permit a finding of the requisite intent beyond a reasonable doubt. We agree with the court of appeals' reading of *Schminkey* and its application to the present facts.

■ Although apprehension of the suspect within a short time of the taking of the vehicle does not defeat the possibility that there was an intent to permanently deprive the owner of the property at the time of the taking, it is a circumstance that severely limits the circumstantial evidence from which that intent can be inferred. The State urges that the circumstances under which the defendant abandoned the vehicle, i.e., stopping it and running away, are indicative of the requisite intent. We disagree. Abandoning the vehicle and fleeing upon observing the presence of police was an act that would ordinarily assure that the truck would be returned to its owner. We affirm the decision of the court of appeals holding that the evidence was insufficient to support a conviction for second-degree theft.

■ The court of appeals simply remanded the case for further proceedings not inconsistent with its opinion. We believe a more specific remand mandate is warranted. The offense of operating a motor vehicle without the owner's consent in violation of Iowa Code section 714.7 was submitted to the jury as a lesser-included offense. The jury did not reach a verdict on that offense because it found that the State had established all elements of the greater offense. In so doing, the jury necessarily found that the State had established all elements of the included offense.

In such instances, we have approved entering an amended judgment of conviction with respect to the lesser-included offense. *State v. Pace*, 602 N.W.2d 764, 774 (Iowa 1999); *see also State v. Lampman*, 342 N.W.2d 77, 81 (Iowa Ct.App.1983); 5 Am. Jur.2d *Appellate Review* §§ 836, 844 (1995). We order that this be done following remand in the present case. Defendant shall then be resentenced according to law.

## DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.

All justices concur except CARTER, J., who concurs specially, and LARSON, CADY, and STREIT, JJ., who dissent.

CARTER, Justice (concurring specially).

Although I am troubled with the decision of the court in *State v. Schminkey*, 597 N.W.2d 785 (Iowa 1999), for the reasons set forth in my dissent in that case I do not agree that that decision only applies to guilty pleas, as the dissent in the present case suggests.

*Schminkey* involved the taking of an *Alford* plea in which the defendant refused to admit guilt. When this occurs, the court, before accepting the plea, must determine whether the evidence available to the State would be sufficient to sustain a guilty verdict at trial. That is the same analysis that must be undertaken in ruling on a motion for judgment of acquittal. For this reason, *Schminkey* is valid authority for the issue presently before the court.

I believe *Schminkey* failed to recognize the strength of the inference that arises from taking an automobile without the owner's consent. An individual's intent is synonymous with what he wants to do. What he wants to do is usually motivated by and derived from the actor's own best interests. It is in the best interests of one taking another's automobile without permission that the vehicle not be returned to the owner because this may aid in the identification of the perpetrator.

Notwithstanding my conclusions in this regard, I concur in the result because I am unable to find that the totality of the evidence in the present case, including the presumption to which I refer, is sufficient to sustain a verdict of guilty on the greater charge. The defendant should be declared guilty of the lesser-included offense.

LARSON, Justice (dissenting).

I dissent because the plurality fails to recognize and apply the well-established principle that a defendant's possession of recently stolen property creates an inference that the defendant stole it. In concluding that proof of intent was not established in this case, the plurality expressly relies on *State v. Schminkey*, 597 N.W.2d 785 (Iowa 1999), stating, "[w]e agree with the court of appeals' reading of *Schminkey* and its application to the present facts."

Even if the holding in *Schminkey*, was correct, I disagree with the plurality's reliance on it in this case. Both *Schminkey* and the present case involve the sufficiency of evidence on the element of intent to deprive the owner of possession of a vehicle. With that, however, the similarity ends. *Schminkey* was a guilty-plea case, while the present case was tried to a jury. In a guilty-plea case, the State may not rely on inferences to establish a factual basis. In contrast, a jury-tried case is one in which inferences are standard stock-in-trade. *See County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Inferences and presumptions are a staple of our adversary system of fact-

finding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an "ultimate" or "elemental" fact—from the existence of one or more "evidentiary" or "basic" facts.

*Id.* at 156, 99 S.Ct. at 2224, 60 L.Ed.2d at 791. The Supreme Court has further said that:

The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact. *When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him.*

*Id.* at 157, 99 S.Ct. at 2224–25, 60 L.Ed.2d at 792 (emphasis added) (citations omitted).

In a guilty-plea case, it is not permissible for a judge to fill gaps in the factual-basis record by inferring elements of the crime. The difference between guilty-plea cases and fact-tried cases vis-à-vis the function of inferences is significant. In one case, the court observed:

The government argues that this court can infer that [the defendant] had an intent to defraud when he obtained the American Express card using a false name and a false date of birth. Although we agree that a rational *fact finder* could infer an intent to defraud from such evidence, in the context of a challenge to the factual basis supporting a *guilty plea,* we have previously rejected a request by the government to infer a "critical element" of the offense charged.

*United States v. Tunning,* 69 F.3d 107, 113 (6th Cir.1995) (emphasis added) (citation omitted); *see also McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 426 (1969) (holding that a factual-basis record on a guilty plea cannot be supplemented by a district court's "assumptions" of facts). In *United States v. Goldberg,* 862 F.2d 101 (6th Cir. 1988), the court stated:

In our judgment, to permit the district court to infer a factual basis in the absence of a record demonstrating the existence of a factual basis would tend to negate the well-established safeguards inherent in the [federal guilty-plea-rule] mandate.

*Goldberg,* 862 F.2d at 106.

The problem for the state in motor-vehicle larceny cases is that it must prove the defendant knowingly took the vehicle, but it also must prove the defendant took it with the intent to deprive the owner of it. Establishing the first element does not establish the second. We have so held in guilty-plea cases involving theft, holding a factual basis on intent was not established. *Schminkey,* of course, was one of them. In addition, other cases support that proposition. *See, e.g., State v. Auerbach,* 283 N.W.2d 278, 280 (Iowa 1979); *Brainard v. State,* 222 N.W.2d 711, 721 (Iowa 1974). However, in cases that have gone to trial, we have accepted inferences arising from possession of recently stolen property as a means of proving theft. *See, e.g., State v. Rosewall,* 239 N.W.2d 171, 173 (Iowa 1976); *State v. Morrison,* 183 N.W.2d 696, 697 (Iowa 1971); *State v. Everett,* 157 N.W.2d 144, 146 (Iowa 1968). The reliance on use of inferences recognizes the difficulty of proving subjective intent by direct evidence.

In the past, it was customary for our courts to instruct specifically on the inferences to be drawn from possession of re-

cently stolen property. *See, e.g., Morrison,* 183 N.W.2d at 697. This practice, however, has been criticized:

> The instruction on the inferences to be drawn from possession of recently stolen property should be condemned. It is nothing more nor less than a singling out of, and judicial comment on, a specific item of evidence.

*Id.* at 699 (Becker, J., dissenting). Now, juries are presumably instructed in a manner that does not emphasize the defendant's possession of stolen property. Under our uniform instructions, that intent may be based on "circumstances" in the case, but the instructions do not refer to the defendant's possession of recently stolen property as the basis for a presumption. This sanitized form of the instruction was given in the present case, as I will discuss later.

In this case, the court instructed the jury on the elements of both larceny and the lesser offense of operating a vehicle without the owner's consent. The distinguishing feature of the theft charge is the element of intent to deprive the owner of the property. The jury was instructed that, to prove the higher offense of larceny, the State must prove the defendant acted "with the specific intent to deprive [the owner] of the automobile." "Deprivation" was defined in a separate instruction:

> To "deprive the [owner]" of the property, means to withhold permanently or to withhold for so long or under such circumstances the value or benefit of the property is lost to the owner. If a person disposes of property so that it is unlikely the owner will recover it, you may conclude, but are not required to conclude, that the person disposed of the property with the intent to permanently deprive the owner of its use.

The key element of larceny, the *intent* to deprive, was explained in this instruction:

> Specific intent means not only being aware of doing an act and doing it voluntarily, but also doing it with a specific purpose in mind. Specific intent need not exist for any particular length of time before the act.
>
> Determining a defendant's specific intent requires you to decide what the defendant was thinking when the defendant did an act. It is seldom capable of direct proof. *Consider the facts and circumstances surrounding the act to determine the defendant's specific intent.* You may conclude, but are not required to conclude, that people intend the natural results of their acts.

(Emphasis added.) This instruction, substantially the same as Uniform Criminal Instruction 200.2, incorporates the concept of inferences.

The facts presented at trial are briefly stated in the plurality opinion. It is undisputed that Morris took the truck, at about 4:30 a.m., without the owner's consent. The owner immediately called the police who soon located the vehicle and began to give chase. When the police stopped the vehicle, Morris fled on foot. These facts are clearly sufficient to give rise to an inference of guilt, including the element of intent.

The Supreme Court has discussed the nature and limitations on inferences and their status under the Constitution:

> [T]he entirely permissive inference or presumption ... allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant.... Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reason-

able doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

*Allen,* 442 U.S. at 157, 99 S.Ct. at 2224–25, 60 L.Ed.2d at 792.

The plurality points to facts it contends militate against proof of an intent to deprive the owner of possession. These facts include the distance Morris traveled with the truck (approximately five miles) before he was apprehended and the time he had the truck (approximately thirty minutes). These facts are not necessarily helpful to Morris's case, however; his relatively short time of possession might well have been viewed by the jury to be the result of speedy police work—not evidence that he lacked the intent to keep it. In any event, that was a question for the jury. While the facts relied on by Morris may affect the strength of the inference, they do not preclude, as a matter of law, an inference of intent. There is clearly a "rational way the [jury] could make the connection permitted by the inference" under the *Allen* test.

I believe the plurality erred in relying on *Schminkey,* in refusing to recognize the inference of intent, and in failing to conclude that sufficient evidence supports the conviction. I would vacate the decision of the court of appeals and affirm the judgment of the district court.

CADY and STREIT, JJ., join this dissent.