# IN THE COURT OF APPEALS OF IOWA

No. 19-0401
Filed July 1, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH R. DESALME,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


        Joseph Desalme appeals his convictions of second-degree robbery and first-degree theft. **REVERSED AND REMANDED.**


        Martha J. Lucey, State Appellate Defender, and Melinda J. Nye and Stephan J. Japuntich, Assistant Appellate Defenders, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Following a police chase, Joseph Desalme abandoned his vehicle and attempted to snatch two other vehicles, one containing two purses. A jury found Desalme guilty of second-degree robbery and first-degree theft. On appeal, Desalme challenges the sufficiency of the evidence supporting the findings of guilt and raises various other claims. We find the sufficiency argument dispositive.

The jury was instructed that the State would have to prove the following elements of second-degree robbery:

> 1. On or about the 18th day of August, 2018, the [d]efendant had the specific intent to commit a theft.
> 2. In carrying out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant [c]ommitted an assault on [a person] . . . and in committing the assault the defendant caused bodily injury to [the person].

The jury was further instructed the State would have to prove the following elements of first-degree theft:

> 1. On or about the 18th day of August 2018, the [d]efendant took possession or control of property from [one or two persons].
> 2. The defendant had the intent to permanently deprive [the persons] of the property.
> 3. The property belonged to [the persons].

The jury was informed that:

> [A] person commits a theft by exercising control over stolen property, knowing such property to have been stolen, or by taking possession or control of the property of another, or property in the possession of another, with the intent to permanently deprive the other of the property.

An "intent to deprive" was defined for the jury as "an intent to permanently withhold, or withhold for so long, or under such circumstances, that its benefit or

value is lost; or, the property is disposed of in such a manner or under such circumstances, as to render it unlikely that the owner will recover the property."

Desalme contends "[t]he State failed to prove that [he] intended to permanently deprive the complaining witnesses of their respective properties." "A verdict will be sustained if it is supported by substantial evidence." *State v. Acevedo*, 705 N.W.2d 1, 3 (Iowa 2005). "The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010) (citation omitted).

A reasonable juror could have found the following facts. A Polk County deputy sheriff attempted to pull over a vehicle. The driver, later identified as Desalme, refused to stop and, according to the deputy, "[b]egan driving very recklessly cutting and weaving through traffic, [with] no regard for traffic signals [or] anybody's safety on the road." After about three or four minutes, Desalme opened the door, bailed out, and ran into the woods.

Desalme ended up at a storage facility in Ankeny, where he encountered a woman, her dog, and the woman's partner. According to the woman, Desalme "came running around the corner," heading towards them. The dog went "crazy," and the woman grabbed the dog, returned to her vehicle, sat in the front passenger seat of the car, and closed the door. Desalme "jumped into the driver's seat and reached for the keys." The woman asked Desalme what he was doing. Desalme responded, "I gotta have this. You don't understand. I need this. You don't understand." At this juncture, the woman's partner, who was still outside, noticed what was going on, grabbed Desalme and pulled him out of the driver's seat. A tussle ensued. The woman jumped into the driver's seat to prevent Desalme from

reentering. Desalme punched the man and said, "Let me borrow your car, man. The cops are chasing me." The woman "started screaming," and Desalme "took off running."

Another woman was also at the storage facility, along with her daughter and grandson. While she was in the storage unit, she heard her daughter telling a man to get out of her car. The woman went out and saw her daughter "in the passenger side" and "a gentleman in the driver's side" of the car with the door open. "He was trying to jam keys in the ignition and take the car." The man became frustrated when the keys would not work, and he tried to grab the women's purses. The daughter pulled them away. Desalme "pleaded to [the woman] to give the keys to [her] car to him because he was running from the cops." She "said no." Desalme "got frustrated things weren't working out for him and he ran off." He did not take the purses.

An Ankeny police officer who was called to assist the Polk County sheriff with Desalme's apprehension saw him at an intersection. The officer arrested Desalme.

As noted, the jury received an instruction on the meaning of "intent to deprive." The definition tracks the definition the supreme court adopted in *State v. Schminkey*, 597 N.W.2d 785 (Iowa 1999). There, the court accepted the defendant's argument that "an intent to *permanently* deprive the owner of his property is an essential element of theft under section 714.1(1)." *Schminkey*, 597 N.W.2d at 789. The court found no facts "indicating that [Schminkey] intended to do anything more than temporarily use the vehicle to go home or to another bar."

*Id.* at 791. The court found its holding consistent with *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974).

In *Brainard*, the defendant admitted that he "took" a car and he did not intend to bring it back. 222 N.W.2d at 721. Notwithstanding these admissions, the court concluded, "At most petitioner admitted a wrongful taking of the owner's car, but the colloquy did not reveal . . . a factual basis for determining he took the car with an intent to steal." *Id.*

The supreme court reaffirmed *Schminkey* in *State v. Morris*, 677 N.W.2d 787, 788 (Iowa 2004). There, the defendant was found to have taken a truck that was warming up on the street in front of the victim's home. *Morris*, 677 N.W.2d at 787–88. The court stated,

> Although apprehension of the suspect within a short time of the taking of the vehicle does not defeat the possibility that there was an intent to permanently deprive the owner of the property at the time of the taking, it is a circumstance that severely limits the circumstantial evidence from which that intent can be inferred.

*Id.* at 788. The court found the evidence "insufficient to support a conviction for second-degree theft." *Id.*

We agree with Desalme that if the evidence was insufficient in *Brainard*, *Schminkey*, and *Morris*, the evidence was insufficient here. Desalme did far less than the defendants in those cases. He tried to start the cars and he grabbed two purses, but the cars did not move and the purses remained in the vehicle. Under the definition of "intent to deprive" the jury received, Desalme did not deprive the owners of anything, let alone on a permanent basis. *See State v. Fuentes*, No. 03-0426, 2004 WL 1854103, at *2 (Iowa Ct. App. Jul. 28, 2004) (finding insufficient evidence of intent to commit a theft to support a conviction for second-degree

robbery where the defendant "testified he did not intend to keep the van; the van was not driven a great distance from where taken; the van was found the same night it was taken; no attempt was made to conceal the van; and the van was in drivable condition"); *State v. Ellis*, No. 02-1466, 2003 WL 22087525, at *2 (Iowa Ct. App. Sept. 10, 2003) (finding insufficient evidence to support an intent to permanently deprive a person of a camera where the defendant reached into a car and grabbed a camera from the occupant's lap but did not take off with it and instead stood outside the car and "'fidgeted' with it"). For that reason alone, Desalme could not be guilty of theft. *See State v. Donaldson*, 663 N.W.2d 882, 886 (Iowa 2003) ("'[P]ossession or control' begins and a theft is completed when the actor secures dominion over the object or uses it in a manner beyond his authority."); *see also State v. Nall*, 894 N.W.2d 514, 520 (Iowa 2017) ("*Donaldson* focused on *when* a change of possession and control occurs for purposes of theft by taking.").

We recognize that, under the robbery definition, DeSalme did not have to steal the items; he only needed to have the intent to commit a theft. The State gleans that intent from his acts of racing away from law enforcement officers and assaulting the man at the storage facility. But the high-speed chase is simply evidence of Desalme's intent to escape—not his intent to permanently deprive the bystanders of their property.[1] *See State v. Bevar*, No. 10-0987, 2011 WL 1378838, at *3 (Iowa Ct. App. Apr. 13, 2011) (reversing a finding of guilt for first-degree robbery reasoning "the natural and logical conclusion is [the defendant] intended

---

[1] Desalme pled guilty to the misdemeanor crime of eluding.

to liberate herself, not permanently deprive [the jailer] of the keys, flashlight, and handheld scanner"); *State v. Powell*, No. 05-1757, 2007 WL 112890, at *1–3 (Iowa Ct. App. Jan. 18, 2007) (finding insufficient evidence of intent to permanently deprive despite the defendant's refusal to stop for law enforcement officers who attempted to pull him over).  And the assault goes to the second robbery element— "In carrying out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant [c]ommitt[ed] an assault on [an individual] . . . and in committing the assault the defendant caused bodily injury to [the individual]."

The State also contends Desalme's intent may be discerned from the fact "he had no relationship" with the individuals at the storage facility and, accordingly, "would have [had] no way to return the car."  But Desalme's own words suggest an intent to only temporarily divest the owners of their vehicles.  *See State v. Branch*, No. 10-1438, 2011 WL 6661176, at *7 (Iowa Ct. App. Dec. 21, 2011) (finding insufficient evidence of an intent to deprive a person of his vehicle where the defendant's sister testified to the defendant's blackouts and the defendant testified he had not driven a car in years); *State v. Davolt*, No. 10-0071, 2010 WL 5394989, at *1 (Iowa Ct. App. Dec. 22, 2010) (reversing a finding of guilt on a charge of first-degree theft where a witness stated the defendant took the vehicle because he got stranded).  As noted, Desalme asked one of the individuals at the storage facility if he could "borrow" the vehicle and he "pleaded" with the occupant of the other vehicle to give him the keys.  These accounts of what Desalme said are noteworthy because they were made by the very people whose vehicles and personal safety were in jeopardy.

The record lacks substantial evidence to support a finding of Desalme's intent to permanently deprive the owners of their vehicles or purses.  Accordingly, we reverse his robbery and theft convictions and remand for dismissal.  In light of our disposition, we find it unnecessary to address the remaining issues raised by Desalme.

**REVERSED AND REMANDED.**