# IN THE COURT OF APPEALS OF IOWA

No. 22-1114
Filed June 7, 2023

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**BRANDON SCOTT STEVENS,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Poweshiek County, Lucy J. Gamon, Judge.


　　　　A defendant appeals his conviction for theft of a motor vehicle. **REVERSED AND REMANDED.**


　　　　Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

　　　　Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.


　　　　Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

A jury convicted Brandon Stevens of theft in the second degree for taking an electrical contractor's work van. Stevens contends the State did not prove his intent to permanently deprive the owner of its property. Because the State did not prove that element beyond a reasonable doubt, we reverse his conviction for second-degree theft and remand for entry of judgment on the offense of operating a motor vehicle without the owner's consent.

## I.    Facts and Prior Proceedings

Eric Hartz worked as a journeyman electrician for S&S Electric in Grinnell. One winter night in 2019—after coming home late from an out-of-town job—he parked the company van in the alley behind his house. By mistake, he left it unlocked with the keys in the ignition. By morning, it was gone. Hartz called his boss and the Grinnell police to report the missing van.

Two days later, police found the van at a farmstead a few miles outside of town. On the van's exterior, some of the company name had been scratched off.



As this photo exhibit shows, on the driver's side, half of the first "*S*" in "*S & S*" and the "EL" in "ELECTRICAL" were gone. The rest of the lettering was undisturbed.

Inside the van, an inventory revealed about $13,500 worth of tools were missing.[1] And whoever had been using the van left behind "quite a bit of clutter." That clutter included remnants of a taco pizza, pop cans, a paper cup, a butane torch, a sweatshirt, and cigarette butts. Sergeant Benjamin Smith submitted several of those discarded items to the state crime laboratory for DNA analysis. From there the lab developed a profile, which Smith uploaded to the Combined DNA Index System (CODIS). He received a "hit" identifying Stevens as a suspect. Smith then obtained a buccal swab sample from Stevens. That sample "matched"[2] the DNA profile developed from the items in the van.[3]

After receiving that lab report, Grinnell police obtained an arrest warrant for Stevens. Officer Bryce Doane took Stevens into custody and questioned him at the sheriff's office. In the recorded interview, Stevens told the officer: "It was cold. I took a ride out there, and I fucking left it."

The State charged Stevens with two counts: (1) theft in the first degree for taking in excess of $10,000 worth of tools from inside the van and (2) theft in the second degree for taking the van itself. The trial information also listed Stevens's three prior felony convictions for purposes of the sentencing enhancement under Iowa Code section 902.8 (2020).

---

[1] Law enforcement never located the missing tools.

[2] Sergeant Smith testified that—according to the lab report—the lowest probability of finding this profile in a population of unrelated individuals chosen at random would be one in 1.8 octillion.

[3] Lab tests showed that DNA was left on the discarded items by at least three people.

At the 2022 jury trial, the State offered evidence that Stevens's DNA was found in the van and that he admitted taking it from the alley behind Hartz's residence. He drove the van out of town and allowed other people access to it.

Indeed, Stevens admitted taking the van. He described being homeless and noticing the van parked in an alley:

> [T]he door was open and the dome light was on, so that took me to the van. I looked in it, and I seen the keys. Oh, this is almost a Godsend because I was freezing. Without really contemplating anything else, I jumped in the van, shut the door and started it, backed up, and took off immediately headed out of town to where the van was found to Katie—Katie's house and Shane's house.

Stevens alleged that he spent about five hours in the van. He spent that time using drugs and having a "secretive" sexual liaison with Katie, who then gave him a ride back to town.[4] He claimed that "everything was intact" when he left the van at the rural location.

In closing arguments, defense counsel urged the jury to acquit on the greater offense of theft in favor of operating without owner's consent:[5]

> It seems to me there is an awful lot of evidence missing to say he intended to permanently deprive the owner of that vehicle. He left it in a place where it would be found. He never went back to it. He left it unlocked with the keys in the ignition. He did nothing to try to disguise it or hide it.

---

[4] Katie was not a witness at the trial. Sergeant Smith testified that he did not interview her because she was a "fugitive" at the time. Smith also testified that he once had "an open theft case" with Katie's boyfriend Shane, but could not reach him for this investigation because his phone was disconnected.

[5] The court instructed the jury on that lesser-included offense: "Any person who shall take possession or control of any . . . self-propelled vehicle, . . . the property of another, without the consent of the owner of such, but without the intent to permanently deprive the owner thereof, shall be guilty of an aggravated misdemeanor." Iowa Code § 714.7 (2019).

During deliberations, the jury asked the court to define "permanently deprive." With the sign-off from both the prosecutor and defense counsel, the court responded: "there is no legal definition of the phrase 'permanently deprive.' Please reread the instructions."

Less than forty minutes later, the jury returned its verdicts. The jury found Stevens not guilty on the theft-of-tools count but guilty on the theft-of-vehicle count. Stevens now challenges the sufficiency of the evidence for that verdict.

## II.    Substantial Evidence

We review this sufficiency claim for correction of legal error. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider whether, when taken in the light most favorable to the State, the verdict is supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact that Stevens is guilty beyond a reasonable doubt. *See id.* This standard means that evidence must do more than raise "suspicion, speculation, or conjecture" to a rational jury. *State v. Leckington*, 713 N.W.2d 218, 221 (Iowa 2006).

To convict Stevens of second-degree theft, the State had to prove two elements. First, that he knowingly took possession of a van belonging to S&S Electric. Iowa Code §§ 714.1(1), .2(2). And second, that he did so with the specific intent to permanently deprive the company of its property. *Id.* §§ 714.1(1), .2(2). Stevens does not dispute the taking.[6] Instead, he contends that the State did not

---

[6] When first confronted by Officer Doane, Stevens denied taking the van. But within a few minutes, he admitted that he took it "to have sex with Katie."

prove beyond a reasonable doubt that he had the intent to permanently deprive the owner of its property.[7]

Proof that Stevens acted with the purpose of permanently depriving S&S Electric of its van required the jury to decide what he was thinking when he drove away in the van. *See State v. Hanes*, 790 N.W.2d 545, 556 (Iowa 2010) ("The specific intent is linked to the proscribed act and therefore must be present at the time of the proscribed act."); *State v. Miller*, No. 16-2110, 2018 WL 1099580, at *5 (Iowa Ct. App. 2018). Because a person's thought process can seldom be shown by direct evidence, the prosecution may rely on circumstances surrounding the criminal act. *Schminkey*, 597 N.W.2d at 789. Thus, we examine the record for facts that would support an inference that Stevens intended to take more than temporary possession of the van. *Id.* "[T]he mere fact" that he took the van without the owner's consent does not give rise to that inference. *Id.* at 791; *see also State v. Morris*, 677 N.W.2d 787, 788 (Iowa 2004).

So what facts or circumstances may give rise to that inference? In defending the verdict, the State first points to this passage from its cross-examination of Stevens when the prosecutor asked: "Did you have that cell phone with you at the time you stole the van?" And Stevens replied: "My cellphone was not working at the time I stole the van or wasn't on."[8] The State seizes on

---

[7] The "intent to deprive" language in the definition of theft at Iowa Code section 714.1(1) means the intent to "permanently" deprive. *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999).

[8] The prosecutor was testing Stevens's story. Stevens claimed that he knocked on the door of the trailer where Katie's ex-husband lived—in the middle of the night—to ask that he "get ahold of Katie" because Stevens did not want to tip off her new boyfriend that he wanted to hang out with her and do drugs.

Stevens's answer incorporating the term "stole" as an admission to "stealing" the van—rather than borrowing it or taking a "joyride." But Stevens argues in his reply brief that his echoing of "stole" says "nothing intrinsically about the intent to permanently deprive the owner of the property." We agree.

Moving on, the State emphasizes that Stevens drove the van out of Grinnell and parked on a farmstead "behind a barn." But again, as Stevens notes in his reply brief, the record does not support the State's suggestion that the van was hidden behind a barn. Rather, the photos below show only that the van was parked in the country near a shed, a tractor, some big bales, and a cattle pasture.[9]



Yet the State contends that the distance that Stevens drove out of town and the interval of time between the taking and the van's discovery distinguish this case from *Schminkey* and *Morris.* In *Schminkey*, the supreme court found no factual basis for an intent to permanently deprive when the defendant took a truck without permission but wrecked it before he could dispose of it. 597 N.W.2d at 791 ("In our search for other facts or circumstances that might reveal Schminkey's intent in taking the pickup, we find none indicating that he intended to do anything more than temporarily use the vehicle to go home or to another bar."). In *Morris*, the

---

[9] No witness testified how far the van was parked from the gravel road.

court reversed a theft conviction when the defendant was caught about five miles from the owner's residence after possessing the truck for about thirty minutes. 677 N.W.2d at 788 ("Abandoning the vehicle and fleeing upon observing the presence of police was an act that would ordinarily assure that the truck would be returned to its owner."). The State notes that unlike *Schminkey*, Stevens didn't wreck the van. And unlike *Morris*, he didn't abandon it at the sight of the police.

True, this case presents a scenario different from *Schminkey* and *Morris*. But the differences do not show Stevens's intent to permanently deprive the owner of the van. Stevens parked the van just a few miles outside of town—on a working farm where logically it would be discovered and returned to its owner. And that's what happened. Within two days, the farm owner noticed the van and called his brother, who was coincidentally an employee of S&S, to ask what work they were doing.[10] The company president confirmed the location of the missing van and called police. Neither the short distance nor the brief timeframe provides proof beyond a reasonable doubt that Stevens had the requisite intent to commit theft.

In its strongest argument, the State points to evidence that someone started to remove decals from the side of the van, presumably to make it less conspicuous. Trouble is, the State did not prove Stevens undertook that effort. Stevens claims he left the van intact. Granted, the jury could reject his testimony.[11] But the State

---

[10] The farmer also reported seeing a Ranger, described as a small all-terrain vehicle, near the van when it was discovered. Police knew Katie and Shane had a Ranger. But the investigation did not confirm their presence at the scene.

[11] On appeal, Stevens contends the State ignores the "elephant in the room"—the jury's acquittal on the theft-of-tools count. He contends that the inconsistency in the verdicts supports his insufficiency argument. On its face, Stevens's argument has some logical appeal since evidence of his guilt is only substantial "if it would convince a *rational* trier of fact." *State v. Warren*, 955 N.W.2d 848, 856 (Iowa

offered no countervailing evidence to show that it was Stevens who defaced the company logo. Without such evidence, the jury was left to speculate who tried to remove the decals.

Finally, the State contends that the jury could have embraced Stevens's testimony that he was without housing and inferred that he intended to use the van as a permanent shelter.[12] According to the State, the van's lived-in look, depicted in this photo exhibit, was "inconsistent with Stevens's claim that he abandoned it just hours after his quick sexual outing."



We are not persuaded that this mess exposed Stevens's long-term plans—formed when he took the van—to keep it for his own use. To the contrary, the items found in the van all corroborate a brief stay. One piece of clothing, half a

---

2021) (emphasis added) (citation omitted). But he offers no case law to support his position that "both verdicts cannot be right" here. And he does not raise a separate inconsistent-verdicts claim. *See State v. Halstead*, 791 N.W.2d 805, 807 (Iowa 2010). So we do not consider this argument.

[12] Stevens's mother also testified that her son was "homeless" and could not stay with her because she had moved into assisted-living apartments.

taco pizza, a few empty cans, cigarette butts, and a lighter do not scream permanency. Just as joyriding[13] is not auto theft, neither is joyparking. *See Schminkey*, 597 N.W.2d at 791.

Even viewing the evidence in the light most favorable to the State, we cannot find substantial evidence that Stevens took the van "for more than a joyride" into the country to rendezvous with Katie and use drugs. *See State v. Clay*, 824 N.W.2d 488, 499−500 (Iowa 2012). In *Clay*, the supreme court found that the accused's out-of-court statements about his plan to drive a stolen car to South Dakota could convince a reasonable jury that he intended to permanently deprive the owner of the vehicle. *Id.* By contrast, the State offered no admissions from Stevens or others that he had the intent to permanently deprive the company of its van. In fact, the only evidence of Stevens's motive came from his own testimony, as well as his statements to Officer Doane, that he only took the van to get warm and meet up with Katie. The jury can disbelieve the defense narrative. *Leckington,* 713 N.W.2d at 214. But there is "little other evidence by which to judge his state of mind" at the time he took the vehicle. *See State v. Branch*, No. 10-1438, 2011 WL 6661176, at *7 (Iowa Ct. App. Dec. 21, 2011). The evidence shows only that Stevens abandoned the van, he "did not intentionally wreck the vehicle, sell it, or do anything else that would have prevented its eventual return" to the company.

---

[13] This turn-of-the-century coinage means "[t]he illegal driving of someone else's automobile without permission, but usually with no intent to deprive the owner of it permanently; . . ." *Joyriding*, *Black's Law Dictionary* (11th ed. 2019) (citing Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 333 (3d ed. 1982) for history of the term: "When the automobile began to appear and was limited to the possession of a few of the more fortunate members of the community, many persons who ordinarily respected the property rights of others, yielded to the temptation to drive one of these new contrivances without the consent of the owner").

*State v. Moss*, No. 10-0079, 2010 WL 5050561, at *3 (Iowa Ct. App. Dec. 8, 2010); *see also Brainard v. State*, 222 N.W.2d 711, 721 (Iowa 1974) (plurality opinion) (finding defendant had no intent to permanently deprive owner of vehicle when he "neither intended to sell it nor to bring it back").

Under these circumstances, substantial evidence does not support the jury's finding that Stevens intended to permanently deprive the company of its van. As for a remedy, we remand for entry of an amended judgment and sentence on the lesser-included offense of operating without the owner's consent. *See Morris*, 677 N.W.2d at 789.

**REVERSED AND REMANDED.**